UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
STEFANIA LEONE f/k/a STEFANIA DESANTIS,

                                  Plaintiff,                         Civil Action No:

                                -against-

THE INTERPUBLIC GROUP OF COMPANIES, INC., FCB     COMPLAINT
WORLDWIDE, INC., and AREA 23,

                                Defendants.
--------------------------------------------------------------------------------X

Plaintiff, Stefania Leone f/k/a Stefania DeSantis ("Plaintiff" or "Ms. Leone"), by her attorneys, Katz Melinger PLLC, complaining of the defendants, The Interpublic Group of Companies, Inc. ("IPG"), FCB Worldwide, Inc. ("FCB"), and AREA 23 (collectively, "Defendants"), respectfully alleges as follows:

**I. Nature of Action, Jurisdiction, and Venue**

1.     This is an action seeking equitable and legal relief for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and New York Labor Laws ("NYLL") §§ 190 *et seq.* and 650 *et seq.* and 12 NYCRR 142-2.14.

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA.

3.     This Court has supplemental jurisdiction over the claims arising under New York state law pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely related to Ms. Leone's federal claims as to form the same case or controversy under Article III of the United States Constitution.

4.     Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and

Defendants conduct business through their employees, including Ms. Leone, within this judicial district.

## II. Parties

5. Plaintiff Stefania Leone is an individual residing in the state of Connecticut.

6. Ms. Leone is a covered employee within the meaning of the FLSA and the NYLL.

7. Defendant The Interpublic Group of Companies, Inc. is a Delaware corporation with its principal place of business located at 909 Third Avenue, Floor 23, New York, New York 10022.

8. IPG is a global advertising and marketing services company with nearly 50,000 employees.

9. Defendant FCB Worldwide, Inc. is a Delaware corporation with its principal place of business located at 150 E. 42nd Street, New York, New York 10017.

10. FCB is a marketing communications company with more than 8,000 employees, and is a subsidiary of IPG.

11. Defendant AREA 23 is a New York public company with its principal place of business located at 622 Third Avenue, Third Floor, New York, New York 10017.

12. AREA 23 is engaged in the business of healthcare marketing and advertising, and is a subsidiary of IPG.

13. IPG, FCB, and AREA 23 are covered employers within the meaning of the FLSA and NYLL and, at all relevant times, employed Ms. Leone.

14. Upon information and belief, Defendants' revenues are in excess of the minimum required to fall within the jurisdiction of the FLSA.

15. Defendants are subject to suit under the statutes alleged above.

## IV. Factual Allegations

16. Ms. Leone worked for Defendants as an Executive Assistant from July 26, 2011 until on or about March 15, 2016.

17. As an Executive Assistant, Ms. Leone provided administrative support for several executives at AREA 23, including screening calls; managing calendars; making travel, meeting and event arrangements; preparing reports and financial data; training and supervising other support staff; and client relations.

18. Ms. Leone was an exemplary employee throughout her employment with Defendants.

19. Ms. Leone received numerous raises and bonuses, as well as praise from her direct supervisors and other officers within the company.

20. Ms. Leone was a non-exempt employee pursuant to the FLSA and the NYLL, and was entitled to overtime compensation.

21. Ms. Leone's regular rate of pay was approximately $28.85 per hour from July 2011 until January 2013 ($60,000 annualized); $29.71 per hour from February 2013 until December 2013 ($61,800 annualized); $31.25 per hour from January 2014 until October 2014 ($65,000 annualized); $32.93 per hour from October 2014 until November 2015 ($68,500 annualized); and $34.62 per hour from November 2015 until her termination ($72,000 annualized).

22. Ms. Leone reported directly to Renee Mellas, Executive Vice President, Managing Director ("Ms. Mellas"). She also supported Linda Horn, Vice President, Director of Human Resources, and Tim Hawkey, Executive Vice President, Managing Director.

23. In addition, Ms. Leone worked indirectly with Ms. Mellas' supervisor, Dana Maiman, Chief Executive Officer for FCB, and her Executive Assistant Irene Pisarczyk.

24. Ms. Mellas was Ms. Leone's direct supervisor from in or around September 2011 until in or around September 2012, when Ms. Mellas left AREA 23.

25. In or around June 2014, Ms. Mellas returned to AREA 23, and Ms. Leone began reporting directly to Ms. Mellas once again, a role Ms. Leone continued to perform until her termination on or about March 15, 2016.

26. Upon information and belief, Ms. Leone received all of the regular and overtime wages owed to her from the start of her employment through June 2014.

27. At the start of her employment, Ms. Leone regularly worked in the office five (5) days per week from approximately 8:30 a.m. until 5:30 p.m., without any lunch or other breaks, for a total of approximately forty-five (45) hours per week.

28. Gradually, as her responsibilities increased, Ms. Leone began working in the office from approximately 7:30 a.m. until 5:30 p.m., but would sometimes stay as late as 6:30 p.m., for a total of approximately fifty (50) to fifty-five (55) hours per week.

29. Throughout her employment, Ms. Leone also routinely performed work-related tasks during her commute between her office in Manhattan and her home in Connecticut, as well on weekends, totaling approximately ten (10) additional hours of work per week.

30. However, upon her return to AREA 23 in June 2014, Ms. Mellas met with Ms. Leone and Ms. Horn to discuss Ms. Leone's work hours.

31. Specifically, Ms. Mellas expressed displeasure at the number of overtime hours Ms. Leone was working and instructed Ms. Leone to reduce the number of overtime hours that she recorded in her timesheets each week.

32. Ms. Mellas did not change Ms. Leone's job duties or responsibilities or otherwise alter Ms. Leone's workload in any way that would allow Ms. Leone to complete her work-related tasks in less time.

33. Ms. Leone was a diligent worker and did not record more hours than necessary to complete her assignments.

34. Upon information and belief, Ms. Horn and Ms. Pisarczyk informed Ms. Mellas that the number of hours Ms. Leone worked was consistent with the level and amount of her duties and responsibilities, and that Ms. Leone worked fewer hours than the Executive Assistant at NeON, an FCB Health Agency whose office was significantly smaller than Ms. Leone's office at the time.

35. Nevertheless, Ms. Mellas continued to comment on the number of hours Ms. Leone was working.

36. Since Ms. Leone did not believe she could perform all of her work in a fewer number of hours, and Ms. Mellas did not reduce or change Ms. Leone's duties, Ms. Leone reasonably concluded that Ms. Mellas was instructing her to record fewer hours on her timesheets than Ms. Leone was actually working.

37. From the start of her employment until in or around June 2014, Ms. Leone recorded all of the hours she worked, including the hours that Ms. Leone worked outside of the office.

38. However, based on Ms. Mellas' instructions, from in or around June 2014 until her termination, Ms. Leone only recorded the hours that she spent working in the office, and did not include in her timesheets the work that she performed during her commute or on nights and weekends.

5

39. As a result, Ms. Leone only recorded approximately fifty (50) to fifty-five (55) hours of work in her weekly timesheets although she routinely performed approximately sixty (60) to sixty-five (65) hours of work each week from in or around June 2014 through in or around December 2015.

40. Ms. Leone was not compensated for the hours that she worked but did not record in her weekly timesheets.

41. Although Ms. Leone followed Ms. Mellas' instructions and reduced the number of hours she recorded in her weekly timesheets, Ms. Mellas continued to criticize Ms. Leone for the number of overtime hours she reported.

42. As a result of Ms. Mellas' continued comments about the number of hours Ms. Leone was working, in or around January 2016, Ms. Leone reduced her office hours, arriving at approximately 8:30 a.m., as opposed to her prior arrival time of 7:30 a.m., and leaving at approximately 5:30 p.m., for a total of approximately forty-five (45) hours per week.

43. Although Ms. Leone reported to work one (1) hour later each day, she continued to perform approximately ten (10) hours of work per week outside of her normal work hours and estimates that she worked approximately fifty-five (55) hours per week in 2016.

44. Therefore, from in or around January 2015 until her termination, Ms. Leone only recorded approximately forty-five (45) hours of work in her weekly timesheets although she routinely performed approximately fifty-five (55) hours of work per week in the office and during her commute.

45. Ms. Leone did not record all of the hours that she worked between June 2014 and her termination because she feared reprisal from Ms. Mellas.

46. Upon information and belief, Ms. Mellas, Ms. Horn and Ms. Pisarczyk knew that Ms. Leone was performing work-related tasks outside of her regular office hours.

47. Ms. Mellas and Ms. Horn were included on emails Ms. Leone sent from outside of the office and spoke to Ms. Leone on the phone outside of Ms. Leone's regular working hours.

48. Additionally, Ms. Pisarczyk reviewed Ms. Leone's weekly timesheets and knew the approximate number of hours Ms. Leone spent working in the office each week from in or around June 2014 until Ms. Leone's termination because Ms. Pisarczyk had become a mentor to Ms. Leone and Ms. Leone spoke with Ms. Pisacrzyk about such matters.

49. On several occasions, Ms. Leone directly informed Ms. Mellas and Ms. Horn that she was performing work outside of the office.

50. Ms. Leone also informed Ms. Pisarczyk and Ms. Horn that she was not recording in her timesheets all of the hours she worked each week.

51. In response, Ms. Pisarczyk commented that performing work outside of the office and not recording all hours worked was simply the way of things with modern technology and their roles as Executive Assistants.

52. Although Ms. Leone regularly worked over forty (40) hours in a week, she was not paid one and one-half times her regular rate of pay for all hours worked in excess of forty (40) per week.

53. Ms. Leone repeatedly informed Defendants that she was not receiving all wages to which she was owed.

54. Specifically, Ms. Leone expressed to both Ms. Mellas and Ms. Horn that Ms. Mellas' request that Ms. Leone perform work for which she was not compensated was unfair.

7

55. Rather than address Ms. Leone's concerns, Ms. Mellas expressed a desire to alter Ms. Leone's job title and/or duties to that of an employee exempt from federal and state overtime laws.

56. Following her discussion with Ms. Mellas and Ms. Horn, Ms. Leone informed Ms. Pisarczyk of the details of the conversation, including Ms. Mellas' comments about altering Ms. Leone's job duties to avoid paying Ms. Leone overtime, but Ms. Pisarczyk failed to take any action.

57. On several occasions, Ms. Leone also complained privately to Ms. Horn about Ms. Mellas, but her complaints were largely ignored.

58. Upon information and belief, Ms. Horn failed to report or act on Ms. Leone's complaints due to her close personal and professional relationship with Ms. Mellas.

59. On at least one occasion, Ms. Horn broke Ms. Leone's confidence and informed Ms. Mellas about Ms. Leone's complaints about her.

60. Shortly thereafter, Ms. Mellas informed Ms. Leone that Ms. Horn had revealed something to Ms. Mellas which Ms. Mellas was "really upset about", inferring that Ms. Horn had revealed Plaintiff's complaints about Ms. Mellas to Ms. Mellas.

61. On or about October 18, 2015, Ms. Leone approached Ms. Pisarczyk to inquire about being transferred to another entity within FCB due to Ms. Mellas' treatment of her.

62. Ms. Pisarczyk assured Ms. Leone that she was a valuable asset to Defendants and that Ms. Leone had numerous opportunities available to her within FCB.

63. In or around January 2016, Ms. Pisarczyk informed Ms. Leone about two open Executive Assistant positions; one at NeON, and another at the FCB office in which Ms. Pisarczyk worked.

64. Shortly thereafter, Ms. Pisarczyk informed Ms. Leone that Ms. Mellas was seeking to replace Ms. Leone; that several candidates had been selected; and that Ms. Leone would be scheduling the interviews for her potential replacement.

65. Ms. Leone was told that she was a valued employee and was promised by Ms. Pisarczyk, Ms. Horn, Ms. Mellas and Mr. Hawkey that Ms. Leone would be placed in a new position within FCB.

66. On February 10, 2016, Ms. Mellas sent an email to Ms. Pisarczyk in which she stated that "Stefania is very good at what she does. Mark [Arnold], Kevin [McHale], Rich [Levy], Tom [Kelly], Mike [Guarino] and/or Holly [Henry] would be very, very lucky to have her."

67. The above-listed individuals are executives to whom Ms. Leone would presumably report were she to be transferred: Mr. Arnold and Mr. McHale worked at NeON, while Mr. Levy, Mr. Kelly, Mr. Guarino and Ms. Henry were based out of the FCB office.

68. On or about February 23, 2016, Ms. Leone interviewed with Mark Arnold and Kevin McHale for the Executive Assistant position at NeON.

69. Ms. Leone was never afforded the opportunity to interview for the Executive Assistant position at the FCB office.

70. During her last week at AREA 23, Ms. Leone was repeatedly assured that she would learn of her new assignment by the end of the week.

71. Ms. Pisarczyk told Ms. Leone that she would call Ms. Leone on Friday of that week to let Ms. Leone know to which office she should report on the following Monday.

72. On or about February 25, 2016, the Thursday before Ms. Leone's replacement was to start, Ms. Horn observed Ms. Leone returning to her office from the restroom just before 5:00 p.m. and asked Ms. Leone to join her in an empty office.

9

73. Ms. Horn informed Ms. Leone that she was terminated effective March 15, 2016 but that there was no need for Ms. Leone to return to the office for the remaining two (2) weeks of her employment.

74. Ms. Horn also advised Ms. Leone to print out copies of her pay stubs as she would need them to file for unemployment.

75. Ms. Leone received no explanation as to the reason for her termination.

76. Ms. Leone maintained an impeccable record with AREA 23 and was beloved by clients and colleagues alike.

77. Ms. Leone was terminated in retaliation for complaining about Defendants' unlawful pay practices.

78. Upon information and belief, on or about March 17, 2016, Defendants posted an opening for the position of Human Resources Coordinator for AREA 23, a position for which Ms. Leone was qualified and had previously discussed with Ms. Pisarczyk and Ms. Horn.

79. Upon information and belief, on or about March 22, 2016, Defendants posted an opening for the position of Executive Assistant at FCB Health.

80. Upon her termination, Defendants also failed to reimburse Ms. Leone for the commuter benefits that were deducted from her paychecks by Wage Works.

## **AS AND FOR A FIRST CAUSE OF ACTION**
(Overtime Violations under the FLSA)

81. Plaintiff repeats and realleges all prior allegations.

82. Pursuant to the applicable provisions of FLSA 29 U.S.C. § 207, Plaintiff was entitled to overtime compensation of one and one-half times her regular hourly rate for all hours worked in excess of forty (40) per week.

83. Throughout the relevant time period, Plaintiff often worked in excess of forty (40) hours per week during her employment with Defendants.

84. Defendants knew that Plaintiff often worked in excess of forty (40) hours per week during her employment.

85. Throughout the relevant time period, Defendants knowingly failed to pay Plaintiff overtime wages of one and one-half times their regular rate for all hours Plaintiff worked in excess of forty (40) in a workweek.

86. As a result of Defendants' violations of the law and failure to pay Plaintiff her required overtime wages, Plaintiff has been damaged and is entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

87. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiff is entitled to liquidated damages.

88. Judgment should be entered in favor of Plaintiff against Defendants on the First Cause of Action in the amount of her unpaid overtime wages, liquidated damages, attorneys' fees and costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A SECOND CAUSE OF ACTION**
(Retaliation in violation of FLSA 29 U.S.C. §§ 215(a)(3))

89. Plaintiff repeats and realleges all prior allegations.

90. Throughout the relevant time period, Plaintiff regularly and repeatedly complained to Defendants about Defendants' failure to pay Plaintiff all wages owed to her.

91. Defendants refused to acknowledge Plaintiff's complaints, and instead told Plaintiff that she could transfer to a new entity within FCB.

92. However, before transferring her to a new position, Defendants terminated Plaintiff's employment.

93. Plaintiff was an exemplary employee, and Defendants had no legitimate, non-retaliatory reason for terminating her employment.

94. Plaintiff's termination constitutes unlawful retaliation in violation of 29 U.S.C. §§ 215(a)(3).

95. As a result of Defendants' violations of the law, Plaintiff has been damaged and is entitled to recover from Defendants compensatory, emotional, physical, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees and costs.

96. Judgment should be entered in favor of Plaintiff and against Defendants on the Second Cause of Action for all compensatory, emotional, physical, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorneys' fees, the costs and disbursements of this action and any other damages permitted by law in an amount to be determined at trial.

### AS AND FOR A THIRD CAUSE OF ACTION
(Overtime Violations under the NYLL)

97. Plaintiff repeats and realleges all prior allegations.

98. Pursuant to the applicable provisions of NYLL § 650, *et seq.*, and 12 NYCRR § 142-2.2, Plaintiff was entitled to overtime compensation of one and one-half times her regular hourly rate for all hours worked in excess of forty (40) hours per week.

99. Plaintiff regularly worked in excess of forty (40) hours per week during her employment with Defendants.

100. Defendants knew that Plaintiff often worked in excess of forty (40) hours per week during her employment.

101. Throughout the relevant time period, Defendants knowingly failed to pay Plaintiff overtime wages of one and one-half times her regular rate for each hour worked in excess of forty (40) hours in a workweek.

102. As a result of Defendants' violations of the law and failure to pay Plaintiff her required overtime wages, Plaintiff has been damaged and is entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

103. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiff is entitled to liquidated damages.

104. Judgment should be entered in favor of Plaintiff and against Defendants on the Third Cause of Action in the amount of her respective unpaid overtime wages, liquidated damages, attorneys' fees and costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(Failure to Timely Pay Wages under the NYLL)

105. Plaintiff repeats and realleges all prior allegations.

106. Pursuant to NYLL § 191, Plaintiff was entitled to receive all of her earned wages in accordance with the agreed-upon terms of her employment, but not less frequently than semi-monthly.

107. Plaintiff regularly worked in excess of forty (40) hours per work during her employment with Defendants.

108. Throughout her employment, Plaintiff was entitled to be paid at a rate of one-and-one-half her regular hourly rate for all hours worked in excess of forty (40) per week.

109. Throughout the relevant time period, Defendants failed to pay Plaintiff all wages earned by Plaintiff, including overtime wages for all hours worked in excess of forty (40) in a workweek.

110. Prior to her termination from Defendants, Plaintiff authorized Defendants to deduct a predetermined amount of money in pre-tax compensation for commuter benefits.

111. At the time of Plaintiff's termination, Defendants had made deductions from Plaintiff's wages for commuter benefits which Plaintiff did not receive.

112. Defendants failed to reimburse Plaintiff for the amounts deducted from her wages for which Plaintiff did not receive commuter benefits.

113. As a result of Defendants' violations of the law and failure to pay Plaintiff in accordance with NYLL § 191, Plaintiff has been damaged and is entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

114. Judgment should be entered in favor of Plaintiff and against Defendants on the Fourth Cause of Action for all wages due, liquidated damages, all reasonable attorneys' fees, costs and interest, and such other legal and equitable relief as this Court deems just and proper.

## **AS AND FOR A FIFTH CAUSE OF ACTION**
(Retaliation under the NYLL)

115. Plaintiff repeats and realleges all prior allegations.

116. Throughout the relevant time period, Plaintiff regularly and repeatedly complained to Defendants about their failure to pay Plaintiff all wages owed to her.

117. On March 15, 2016, Defendants terminated Plaintiff's employment in retaliation for her complaints about not being paid overtime compensation owed to her.

118. Plaintiff's termination constitutes unlawful retaliation in violation of the NYLL.

119. Judgment should be entered in favor of Plaintiff and against Defendants on the Fifth Cause of Action for all compensatory, emotional, physical, liquidated, and punitive damages, if applicable, along with lost pay, front pay, reasonable attorney's fees, the costs and disbursements of this action and any other damages permitted by law in an amount to be determined at trial.

**AS AND FOR A SIXTH CAUSE OF ACTION**
(Failure to Provide Payroll Notices Under the NYLL)

120. Plaintiff repeats and realleges all prior allegations.

121. From in or around June 2014 until her termination, Ms. Mellas instructed Plaintiff to record fewer hours on her weekly timesheets than Plaintiff actually worked.

122. As a result, Plaintiff's pay stubs did not indicate all of the hours Plaintiff worked, including the correct number of overtime hours Plaintiff worked.

123. Defendants were aware that Plaintiff was performing work outside of her normal working hours but was not including such hours in her timesheets.

124. Throughout the relevant time period, Defendants failed to furnish to Plaintiff, with each wage payment, a statement listing: the correct number of overtime hours worked and other information required by NYLL § 195(3).

125. As Defendants failed to provide Plaintiff with payroll notices as required by NYLL § 195(3), she is entitled to liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees and costs.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Failure to Reimburse Benefits or Wage Supplements Under the NYL)

126. Plaintiff repeats and realleges all prior allegations.

127. Prior to her termination from Defendants, Plaintiff authorized Defendants to deduct a predetermined amount of money in pre-tax compensation for commuter benefits.

128. At the time of Plaintiff's termination, Defendants had made deductions from Plaintiff's wages for commuter benefits which Plaintiff did not receive.

129. Defendants failed to reimburse Plaintiff for the amounts deducted from her wages for which Plaintiff did not receive commuter benefits.

130. Plaintiff was not acting in a bona fide executive, administrative, or professional capacity at any point during her employment with Defendants.

131. As Defendants failed to reimburse Plaintiff for the monies that Defendants deducted from Plaintiff's wages for benefits which Plaintiff did not receive, Plaintiff is entitled to damages pursuant to NYLL § 198-c in the amount of said deductions, along with all reasonable attorneys' fees and costs.

132. Judgment should be entered in favor of Plaintiff and against Defendants on the Seventh Cause of Action for all reimbursements due, all reasonable attorneys' fees, costs and interest, and such other legal and equitable relief as this Court deems just and proper.

WHEREFORE Plaintiff prays for relief as follows:

a) on the First Cause of Action for all overtime wages due to Plaintiff, an additional award of one hundred percent of all wages due, and all reasonable attorneys' fees in an amount to be determined by this Court;

b) on the Second Cause of Action for all compensatory, emotional, physical, liquidated, and punitive damages, if applicable, along with lost pay, front pay, all reasonable attorneys' fees and any other damages permitted by law in an amount to be determined at trial;

c) on the Third Cause of Action for all overtime wages due to Plaintiff, an additional award of one hundred percent of all wages due, and all reasonable attorneys' fees in an amount to be determined by this Court;

d) on the Fourth Cause of Action for all wages due to Plaintiff, an additional award of one hundred percent of all wages due to Plaintiff, and all reasonable attorneys' fees in an amount to be determined by this Court

e) on the Fifth Cause of Action for all compensatory, emotional, physical, liquidated, and punitive damages, if applicable, along with lost pay, front pay, all reasonable attorneys' fees and any other damages permitted by law in an amount to be determined at trial;

f) on the Sixth Cause of Action for liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00, along with all reasonable attorneys' fees;

g) on the Seventh Cause of Action in the amounts deducted from Plaintiff's wages for which Plaintiff did not receive commuter benefits, along with all reasonable attorney's fees;

    h) Interest;

    i) Costs and disbursements; and

    j) Such other and further relief as is just and proper.

Dated: New York, New York
       March 23, 2017

                                      */s/ Adam Sackowitz*
                                      Adam Sackowitz
                                      Katz Melinger PLLC
                                      280 Madison Avenue, Suite 600
                                      New York, New York 10016
                                      (212) 460-0047
                                      ajsackowitz@katzmelinger.com
                                      *Attorneys for Plaintiff*